```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT
```

DRAXXION TALANDAR,                )
                                  )
    Petitioner/Plaintiff,        )
                                  )
              v.                    )   Case Nos. 2:21-cv-10
                                  )             2:21-cv-11
STATE OF VERMONT,                 )
                                  )
    Respondent/Defendant.         )

## OPINION AND ORDER

Draxxion Talandar, a criminal defendant in the custody of the State of Vermont, brings these two actions claiming denial of his right to a speedy trial in state court.  The first case is brought as a civil action for declaratory judgment under 28 U.S.C. § 2201; the second as a habeas corpus petition pursuant to 28 U.S.C. § 2241.  Substantively, the cases are the same.

The State has moved to dismiss both actions, arguing that pursuant to the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), this Court must abstain from interfering in Talandar's ongoing state criminal proceeding.  For the reasons set forth below, the State's motions to dismiss are granted and the cases are dismissed without prejudice.

## Factual Background

In December 2019, the State filed a six-Count Information against Talandar that included three Counts of felony sexual assault.  That same month, the State filed a two-Count

Information including one Count of felony sexual assault.  Each Count of felony sexual assault carries a maximum penalty of life in prison.

Under Vermont law, a person charged with an offense punishable by life in prison may be held without bail.  13 V.S.A. § 7553.  Talandar was arraigned on January 6, 2020, and the State requested that he be held without bail.  The Vermont Superior Court made oral findings and ordered Talandar's detention.  The court followed with a ten-page written decision detailing its findings, which included: that the evidence of guilt is "great"; the pending charges are extremely serious; the State alleges an extended course of threatening and abusive conduct; Talandar has limited ties to the community; he has used aliases in the past; he poses a serious risk of flight; and no condition or combination of release conditions would reasonably prevent physical violence.

On March 4, 2020, Talandar filed a motion to dismiss for lack of a speedy trial and a motion for release on conditions. On March 16, 2020, the Vermont Supreme Court issued Administrative Order 49 declaring a Judicial Emergency in response to the COVID-19 pandemic and suspending all non-emergency hearings.  That same day, Talandar filed a motion to review his bail, arguing that he should be released in light of the pandemic.  On March 17, 2020, the Vermont Superior Court

held a lengthy evidentiary hearing to determine whether Talandar should be released pending trial. On March 31, 2020, the court issued a 12-page decision denying the request for release pending trial, largely reiterating its prior findings.

Beginning on April 21, 2020, the state court held a multi-day evidentiary hearing with respect to a consolidated group of motions filed by pre-trial detainees seeking release due to the pandemic. On May 19, 2020, Talandar renewed his motion to dismiss, citing state and federal speedy trial and due process requirements. On June 19, 2020, the Vermont Superior Court issued a four-page ruling denying the renewed motion to dismiss, specifically addressing the speedy trial factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). The court noted that "the reason for the current delay is indisputably the cancellation of jury trials as a direct result of the COVID-19 pandemic. . . . The precautionary measures taken by the Vermont Supreme Court are consistent with the orders issued by state courts nationwide." On August 12, 2020, the Vermont Superior Court issued a 45-page ruling in the consolidated COVID-19 matter, denying Talandar's request for release and finding no due process violation.

On August 24, 2020, Talandar again moved to dismiss on the basis of alleged speedy trial and due process violations. On September 28, 2020, the Vermont Superior Court denied his

3

motion, referencing its June 19, 2020 decision and the applicable detention factors.  With respect to the speedy trial issue, the court concluded that "[c]onsidering the plethora of serious charges here and the fact that the unprecedent[ed] pandemic is driving the delay, the court is not persuaded that Mr. Talandar's pretrial incarceration, in itself, establishes a speedy trial violation."

On October 2, 2020, Talandar filed a motion in the Superior Court seeking certification for interlocutory review by the Vermont Supreme Court.  On October 7, 2020, the Superior Court denied the motion, finding that Talandar had not shown a "substantial ground for difference of opinion" involving a controlling question of law, or that he had otherwise satisfied the criteria for appellate review.  The court noted that reversal would only lead to dismissal of the case without prejudice, and that the Vermont Supreme Court had recently rejected a due process challenge to the state judiciary's emergency suspension of jury trials.[1]

On October 20, 2020, Talandar filed an interlocutory appeal to the Vermont Supreme Court.  The State opposed the motion.  On November 10, 2020, the Vermont Supreme Court denied the motion

---

[1] *See State v. Labrecque*, 2020 VT 81, ¶¶ 29-31 (finding 25-month pretrial detention did not violate defendant's rights under the Due Process Clause of the Fifth Amendment where detention was primarily due to COVID-19 crisis).

4

in a one-sentence order, essentially affirming the Superior Court in stating that Talandar had not met the requirements for an interlocutory appeal under Vermont's appellate rules.

Talandar filed the instant actions in this Court on January 19, 2021, the first as a declaratory judgment action and the second as a petition for writ of habeas corpus.  For relief, he seeks a declaration that his detention has violated his rights under the Sixth Amendment, and release from such detention pending his state court trial.  The State has moved to dismiss both actions.

The Court heard oral arguments on the motions to dismiss on May 3, 2021.  The parties informed the Court that criminal trials recently resumed in Vermont, including in Windsor County where Talandar is set to be tried, but that Talandar is currently 17th on that County's trial list.  Talandar's counsel also represented to the Court that he filed a renewed motion for release in the Superior Court, the motion was denied, and he will again appeal to the Vermont Supreme Court.

## Discussion

The Speedy Trial Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend VI. Talandar argues that his continued detention, which currently stands at over sixteen months, violates that federal right.  The

5

State contends that the court cannot consider his claim, and must instead abstain under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

The *Younger* decision held that federal courts may not interfere in ongoing state court criminal proceedings except in specific, narrow circumstances "when absolutely necessary for protection of constitutional rights." 401 U.S. at 56. Such interference may take place only "under extraordinary circumstances," including "where the danger of irreparable loss is both great and immediate." *Id.*; *see also Williams v. Lambert*, 46 F.3d 1275, 1282 (2d Cir. 1995) (*Younger* abstention applies "in the absence of bad faith, fraud or irreparable harm"). Talandar claims irreparable harm, arguing that his continued detention in violation of his right to a speedy trial can only be remedied by immediate release.

The Supreme Court has explained that "[t]he speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker*, 407 U.S. at 522). The Court has therefore formulated a four-factor balancing test that considers: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *United States v. Ghailani*, 733 F.3d 29,

42-43 (2d Cir. 2013) (quoting *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012)). It is well-settled that "[t]hese [four] factors 'must be considered together with such other circumstances as may be relevant,' and 'have no talismanic qualities.'" *Cain*, 671 F.3d at 296 (quoting *Barker*, 407 U.S. at 533).

*Barker* identified three types of delay: deliberate, neutral, and valid. Deliberate delay includes the government "attempting to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. Neutral delay is that which results from, for example, the government's negligence in managing the case. *Id*. A valid delay emanates from factors beyond the government's control. *Id.* A deliberate attempt to delay is weighted most heavily against the government, a neutral reason for delay "may be weighted less heavily," and a valid reason "should serve to justify appropriate delay." *Id.*

In this case, the primary reason for both the delay itself and the length of the delay is a global pandemic, a circumstance that is clearly beyond the government's control. *See United States v. Zhukov*, No. 18-CR-633(EK), 2020 WL 6302298, at *3 (E.D.N.Y. Oct. 27, 2020) ("Thus far, the delay in bringing this case to trial is overwhelmingly attributable to one factor — the COVID-19 epidemic — that is surely beyond the prosecution's control."); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL

5223303, at *3 (M.D. Ga. Sept. 1, 2020) ("Certainly, a global pandemic that is beyond the control of all the parties involved justifies an appropriate delay."); *United States v. Briggs*, No. 2:20-MJ-00410, 2020 WL 1939720, at *2 (E.D. Pa. Apr. 22, 2020) ("The reason for the Government's delay is a valid, neutral reason: a global pandemic."). Although such delay raises constitutional concerns, particularly for criminal defendants, the Vermont Supreme Court acknowledged those concerns when issued its Administrative Order:

> [The] suspension of jury trials implicates fundamental constitutional rights, most acutely in cases in which a criminal defendant is in custody pending trial . . . [i]n light of the course of the public-health crisis, the fact that jury draws and jury trials require that many people operate in close physical proximity, and the strains on the Judiciary arising from the COVID-19 pandemic, it is virtually impossible that jury draws or jury trials would be consistent with public health, as well as the health and safety of parties, their lawyers, and Judiciary staff before the time specified for their resumption.

Explanatory Note – April 6, 2020 Amendment, A.O. 49, pp. 12-13 (as cited in *Labrecque*, 2020 VT 81, ¶ 28). In other words, the state judiciary felt that it had no choice but to impose a general delay given the risks COVID-19 posed to its employees and the general public.

The length of Talandar's time in pretrial detention may give rise to judicial scrutiny, but does not, by itself, create a constitutional violation. *See Doggett v. United States*, 505

U.S. 647, 655-56 (1992) (noting that excessive delay "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria," and that its importance increases with the length of the delay); *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting commentator's assessment of a "general consensus" that a delay of more than eight months is presumptively prejudicial and merits further inquiry). Moreover, the Second Circuit has allowed longer delays under the Sixth Amendment where circumstances justified the delay. *See, e.g., United States v. Jones*, 91 F.3d 5, 9 (2d Cir. 1996) (collecting cases with delays ranging from 28 months to six years).

Here, the speedy trial issue is being managed by the state courts, and there is no cause for federal intervention. The *Younger* doctrine is based upon respect for independent state governance, and a "continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44. "[S]tate courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights, and [the Supreme Court] has refused to sanction any decision that would reflect negatively upon a state court's ability to do so." *Burt v. Titlow*, 571

U.S. 12, 19 (2013) (citations and internal quotation marks omitted).

Furthermore, rather than asking for an immediate trial, Talandar seeks release on conditions. Granting such relief would disregard the Vermont Superior Court's thorough considerations of that issue, and constitute the sort of federal court interference that is plainly barred by *Younger*. *See, e.g, Jordan v. Bailey*, 985 F. Supp. 2d 431, 438 (S.D.N.Y. 2013), *aff'd*, 570 F. App'x 42 (2d Cir. 2014) (*Younger* "requires that this Court abstain from interfering with the pre-trial detention determination of a state court criminal defendant").

Talandar relies in part on a Ninth Circuit case, *Arevalo v. Hennessy*, in which the detainee claimed he had been held without a constitutionally-adequate bail hearing. 882 F.3d 763, 764-65 (9th Cir. 2018). The State conceded there was a constitutional violation, and that habeas corpus relief was due. *Id.* at 764. Nonetheless, the district court *sua sponte* ruled that it must abstain under *Younger* and dismissed the petition. The Ninth Circuit reversed, concluding that *Younger* did not apply because "deprivation of constitutional rights unquestionably constitutes irreparable injury." *Id.* at 766-67 (citations and internal quotations marks omitted).

Here, the Court finds no deprivation of constitutional rights to date. The Vermont court system has been faced with an

historic crisis in the form of the COVID-19 pandemic, and has plainly considered the constitutional interests that must be weighed in the course of protecting public health.  Those interests include the right to a speedy trial, and the state court system is keenly aware of the need to protect that right in the context of ongoing health concerns.  Consequently, while *Younger* permits federal intervention in ongoing state criminal proceedings in narrow circumstance "when absolutely necessary for protection of constitutional rights," no such circumstances are presented here.  401 U.S. at 45.

*Younger* also prohibits federal court involvement when the state court has a means of reviewing constitutional claims. *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994) ("*Younger* abstention applies to state judicial and administrative proceedings, so long as the state court has a means of reviewing constitutional claims.").  Speedy trial claims evolve as the length of the delay increases, and in this case the status of the pandemic is also changing rapidly.  Talandar's counsel reports that he plans to again seek review of his client's claims by the Vermont Supreme Court, which will consider the constitutional claims in the context of present-day facts.  This avenue for review in state court reinforces the conclusion that federal court abstention is warranted.

*Younger* does not fully foreclose granting relief to a state pretrial detainee seeking to remedy an alleged speedy trial violation. *See Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 488-93 (1973); *Winn v. Cook*, 945 F.3d 1253, 1261-62 (10th Cir. 2019). Accordingly, although federal court intervention is not warranted at this time, and while the state courts will undoubtedly work to continue protecting the constitutional rights of criminal defendants in the context of the ongoing pandemic, the evolving nature of a speedy trial claim gives rise to the possibility of future review. Talandar's cases are therefore dismissed without prejudice.

## Conclusion

For the reasons set forth above, the pending motions to dismiss are granted, the petition for writ of habeas corpus is denied, and both of these actions are dismissed without prejudice.

DATED at Burlington, in the District of Vermont, this 11th day of May, 2021.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge